515 So.2d 945 (1987)
Pinkie Albert PULLIAM
v.
STATE of Mississippi.
No. 57291.
Supreme Court of Mississippi.
November 18, 1987.
*946 James D. Minor, Minor & Barnes, Oxford, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the Court:
Pinkie Albert Pulliam was convicted of selling a controlled substance in violation of Section 41-29-139(a)(1) and (b)(2), Mississippi Code Annotated (Supp. 1985). The Circuit Court of Union County, Mississippi, sentenced Pulliam to eighteen (18) years in the custody of the Mississippi Department of Corrections with eight (8) years suspended.
From this conviction and sentence Pulliam appeals and assigns the following as error:
I. The trial court erred in limiting the appellant's cross-examination of a State's witness, Susan Self;
II. The trial court erred in convicting the appellant when the verdict of the jury was not unanimous;
III. The trial court erred in failing to answer the questions posed by a juror while the jury was being polled after the verdict was announced; and
IV. The trial court erred in improperly excusing jurors prior to their appearance in open court.
Pulliam rented a small cafe and it was at this location on February 7, 1985, that Susan Reifers, a Tupelo Police Officer, and Susan Self, an informant, purchased 94.9 grams of marijuana.
Officer Reifers testified that she assisted the Mississippi Bureau of Narcotics in some narcotics cases in Union County, Mississippi. Reifers testified that about midnight on February 7, 1985, she rode out to the cafe with Susan Self, an informant, to purchase drugs from Pinkie Pulliam. Reifers testified that after being introduced as "Teresa, Susan Self's cousin from Memphis," she purchased a bag of marijuana from Pulliam for $230.00.
Pulliam testified that when he went back to the cafe on the night in question Susan Self was waiting for him with a young lady, who was introduced to him as Self's cousin from Memphis. Pulliam testified that Self had left a bag in his cafe which she wanted him to pretend that he owned so that it could be sold to Self's "cousin" without the "cousin" knowing that Self was selling drugs.
Pulliam argues that the State of Mississippi through Susan Self supplied the marijuana and that therefore he was entrapped. Pulliam attempted to establish that Susan Self was out to get him because she had been pregnant by a friend of Pulliam's. During the cross-examination of Self the defense sought to establish that Self, a white female, had borne a child by McKenzie, a friend of Pulliam's who is black. The trial court allowed the defense to question Self about her desire to get even with McKenzie and his friends and allowed the defense to establish that McKenzie and Self had been very close friends.
During her testimony Self admitted that she had received $100.00 for her role in apprehending Pulliam, and that she was motivated by a desire to get even with Pulliam. The trial judge sustained the objections and refused to allow the defense to cross-examine Self about whether McKenzie had fathered her child. The defense was also not allowed to inquire into the reasons McKenzie and Self had terminated their relationship. These restrictions on Pulliam's cross-examination of Self are assigned as error.
The jury that found Pulliam guilty was polled. A juror attempted to ask the judge *947 a question and made remarks which are alleged to have been expressions of doubt about their verdict. The trial judge's failure to answer the juror's question and his determination that the verdict was unanimous are assigned also as error.

I.

DID THE TRIAL COURT ERR IN LIMITING THE CROSS-EXAMINATION OF THE STATE'S WITNESS, SUSAN SELF?
Pulliam alleges that Susan Self had borne a child by McKenzie, one of Pulliam's friends and this was one of the reasons that she sought to get even with him. To bolster his defense of entrapment, Pulliam sought to establish that Self was trying to get him because he was a friend of McKenzie's. Self admitted that she was very angry with McKenzie's friends, and that she had been a very close friend of McKenzie.
When Pulliam attempted to establish that Self had borne a child by McKenzie the trial judge sustained the objection of the State and held that the question and the answer would be irrelevant. This Court in Black v. State, 506 So.2d 264 (Miss. 1987), has held that, "Whether the trial judge abused his discretion in limiting cross-examination is necessarily a matter of careful reflection upon the nature and the purpose of the questions propounded." Black, at 267.
Pulliam argues that these limitations on his cross-examination denied him the opportunity to fully develop his entrapment defense. The jury obviously did not accept Pulliam's story that the marijuana belonged to Self and he was only holding it for her so that Self could sell the drugs to her "cousin" without the "cousin" knowing that Self was the drug dealer. However, we may only speculate as to what the jury's reaction would have been if the entire story of Susan Self had been developed on cross-examination.
Relevance is the key issue when a witness has been cross-examined as to interest, bias, or prejudice, and wide latitude should be allowed. Sanders v. State, 352 So.2d 822 (Miss. 1977). It is beyond question that if there are doubts as to the relevancy of an inquiry into credibility, interest, bias, or motive, those doubts should be resolved in favor of admissibility. Miskelley v. State, 480 So.2d 1104 (Miss. 1985).
Addressing the scope of the inquiry which should be permitted on cross-examination, we in Miskelley stated:
In addressing this question, we are mindful of the principle and rule that a witness may not be impeached upon a collateral matter. Likewise, any evidence that is material and relevant, which has a bearing on the motives, bias, and interests of a witness and affects the credibility of that witness is admissible. In our jurisprudence, cross-examination of a witness is a valuable right which may not be infringed upon or bridled. Cross-examination is one of the most potent tools in the trial of lawsuits to ascertain the truth of a matter. Where there is doubt as to the relevancy of the examination, the scales should weigh in favor of admitting the examination.
Miskelley, at 1108.
While the evidence which the defense sought to obtain from Self might well be far removed from the crime with which Pulliam was charged, it is not so far removed from the defense that he raised that it was not material or relevant. We therefore are of the opinion that the trial judge abused his discretion in excluding this evidence and limiting the cross-examination of the informant Self.

II.

DID THE TRIAL COURT ERR IN CONVICTING THE APPELLANT WHEN THE VERDICT OF THE JURY WAS NOT UNANIMOUS?

III.

DID THE TRIAL COURT ERR IN FAILING TO ANSWER THE QUESTIONS POSED BY A JUROR WHILE THE JURY WAS BEING POLLED AFTER THE VERDICT WAS ANNOUNCED?
After the jury returned a verdict of guilty, the jury was polled. The following remarks were made:

*948 THE COURT: Lessye McKenzie, is this your verdict?
JUROR: Is that my verdict?
THE COURT: Yes, ma'am.
JUROR: Can I talk to you?
THE COURT: Ma'am, your answer should be ...
JUROR: Is this one hundred percent?
THE COURT: Ma'am?
JUROR: One hundred percent? One hundred percent?
THE COURT: The instructions were that you should answer yes or no; is this your verdict. The verdict of the jury, you were instructed, must be the unanimous verdict or all twelve of you must agree. I, again, repeat the question, Lessye McKenzie, is this your verdict?
JUROR: Yes.
This assignment of error is controlled by our decision in Girton v. State, 446 So.2d 570, 572 (Miss. 1984), and Morgan v. State, 370 So.2d 231 (Miss. 1979).
In Morgan v. State, supra, the exchange which occurred was as follows:
COURT: Is this your verdict? Yes.
BOONE: I guess so... . I did not want to be the one to hang the jury.
COURT: Do not say anything else. Is this your verdict?
BOONE: Yes.
Morgan, at 231-232.
In Morgan we stated, "We are of the opinion that the questionable verdict in this case requires us to rule that no verdict either an acquittal or a conviction was reached and that the case must be tried anew." Morgan, at 232. While we recognize that, "[o]ne of the most nettlesome problems faced by a circuit judge is an inquiry from the jury when it has retired to reach its verdict," Girton, 446 So.2d at 572, we are satisfied that here as in Morgan the dialogue between the juror and the trial judge raised a reasonable inference of uncertainty by that juror about the verdict. That is sufficient to warrant a new trial. The response "One hundred percent?" was an expression of doubt and under those circumstances the trial judge erred in demanding that the juror deliver her verdict without following the guidelines of Morgan and Girton.

IV.

DID THE TRIAL COURT ERR IN IMPROPERLY EXCUSING JURORS PRIOR TO THEIR APPEARANCE IN OPEN COURT?
The fourth assignment of error is not supported by citation of authorities and need not be considered by this Court. Because we are remanding the case for a new trial however, we address the assignment only to point out that non-compliance with Section 13-5-23, Mississippi Code Annotated (Supp. 1985), on exemption of jurors does not warrant the quashing of the venire unless there is a showing of actual fraud, prejudice, or such a flagrant violation of duty as to amount to fraud. Parker v. State, 201 Miss. 579, 586-87, 29 So.2d 910 (1947). We find no such showing present here.
Furthermore, Mississippi Code Annotated, Section 13-5-87 (1972), provides, "All provisions of law in relation to the listing, drawing, summoning and empaneling juries are directory merely... ." In Griffin v. State, 494 So.2d 376, 379 (Miss. 1986), we addressed a similar assignment and found "there was compliance with the statute by the circuit clerk, or certainly a substantial compliance; that there was no indication of prejudice or fraud in the method used; and that there is no merit in the assignment of error." Griffin, at 379, citing Harris v. State, 406 So.2d 823 (Miss. 1981). Such is the case here. This assignment is without merit.
We are of the opinion that the trial judge abused his discretion in limiting the cross-examination of the State's witness Self and further, that it was error for the trial court to accept the verdict as unanimous in the face of the questions raised by a juror during the polling that expressed uncertainty and raised inferences that the verdict was itself not unanimous.
REVERSED AND REMANDED FOR A NEW TRIAL.
*949 ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.